UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

CODIE B. SOUTHWORTH,

Case No. 18-11922
Chapter 7

Debtor.

APPEARANCES:

Michael Leo Boyle, Esq.
Attorney for Debtor
Boyle Legal, LLC
64 2nd Street
Troy, NY 12180

James F. Selbach, Esq.
Co-Counsel for Debtor
Selbach Law Offices, P.C.
8809 Daylight Drive
Liverpool, NY 13090

Kailey Southworth, *Pro Se*
111 Oswald Street
Pawtucket, RI 02861

Richard B. Applebaum, Esq., *Pro Se*
1216 Atwood Avenue, Suite 3
Johnston, RI 02919-4912

Robert E. Littlefield, Jr., United States Bankruptcy Judge

### MEMORANDUM-DECISION AND ORDER

The current matter before the Court is a motion for partial summary judgment (the "Motion") filed by Debtor Codie B. Southworth ("Debtor" or "Codie"), alleging violations of 11

U.S.C. § 524[1]'s discharge injunction by Richard B. Applebaum, Esq. ("Applebaum") and Kailey Southworth[2] ("Kailey"). (ECF No. 57). The Debtor requests a finding that Applebaum and Kailey defied Section 524 and that the Court set an inquest on damages. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b). For the reasons that follow, the Motion is granted in part.

## BACKGROUND

This family dispute centers on certain educational loans obtained by Jeffrey B. Southworth[3] ("Jeffrey") to assist Codie in financing his college education. According to Jeffrey, Codie agreed to repay him after graduation; however, nothing was reduced to writing. Jeffrey alleges that Codie made payments for a period of time but then stopped. Jeffrey then sued Codie in Rhode Island Superior Court; Applebaum was the attorney of record in the state court action[4] which has been dismissed. Shortly thereafter, Codie filed a chapter 7 petition in the Northern District of New York. Jeffrey was scheduled as an unsecured creditor. Kailey was not listed as a creditor but was on notice of Codie's filing. She contends that Codie's nonpayment to Jeffrey caused her financial damage because Jeffrey was thus unable to assist her. Under Kailey's analysis, she has higher interest rate loans for a longer duration.

After Codie received his discharge, Applebaum, on behalf of Kailey, sent two (2) collection letters to Codie. A lawsuit against Codie followed in the Rhode Island Superior Court;

---

[1] 11 U.S.C. § 524 is titled "Effect of discharge" and subsection (a) states in relevant part regarding any debt discharged under 11 U.S.C. § 727, the discharge order "(2) operates as an injunction against the commencement or continuation of an action…or an act, to collect...any such debt as a personal liability of the debtor."

[2] Kailey is Codie's sister.

[3] Jeffrey is Codie's and Kailey's father.

[4] A motion for sanctions for violating the discharge injunction against Applebaum and Jeffrey has also been filed. A separate decision will address that matter.

Applebaum is the attorney of record. The state court proceeding has not been withdrawn or dismissed. Codie filed the Motion contending that the collection activities are violations of the discharge injunction.

Kailey is acting *pro se* in this matter because Applebaum is not admitted in the Northern District of New York.

## FACTS

1. Debtor filed his chapter 7 petition on October 31, 2018. (ECF No. 1).

2. Jeffrey was duly scheduled in the bankruptcy case and received notice of the commencement of the proceeding. (Stipulation of Facts filed April 27, 2020) (ECF No. 56).

3. Jeffrey notified Applebaum of the bankruptcy filing at or about the same time Jeffrey received notice. (ECF No. 87, May 20, 2020 Hr'g Tr. 30:2-5).

4. Jeffrey notified Kailey of Codie's filing no later than January 1, 2019.[5] (ECF No. 89).

5. The Bankruptcy Court issued the Discharge Order on February 25, 2019. (ECF No. 56).

6. Any debt owed by the Debtor to Kailey is discharged. *Id*.

7. On March 8, 2019, Applebaum, on behalf of Kailey, sent a collection letter to Codie ("Collection Letter 1"[6]). (ECF No. 57).

---

[5] On July 2, 2020, Jeffrey sent an affidavit to the Court. (ECF No. 89). The affidavit states in part, "To the best of my recollection I had advised Kailey that Codie had filed for bankruptcy relief on January 1, 2019." The affidavit continues, "On June 26, 2020, my oldest daughter ... informed me that she found an email sent to a friend dated November 15, 2018, in which she states my wife and I informed…Kailey of the bankruptcy on November 14, 2018."

[6] Collection Letter 1 states, "Although you received your bankruptcy discharge of your obligation owed to your father, Jeffrey, you still have a contractual and third-party beneficiary contractual obligation remaining due to Kailey." The letter continues, "Unless you guarantee in writing that you will honor your obligation and begin again making payments due (to my office), action will likely be instituted against you for the $34,142.99…." (ECF No. 57).

8. Applebaum and Kailey had notice of the discharge on or before March 8, 2019.[7]

9. On April 10, 2019, Applebaum, on behalf of Kailey, wrote a second collection letter to Codie. ("Collection Letter 2").[8] *Id*.

10. On July 26, 2019, Applebaum, on behalf of Kailey, commenced a collection action bearing Index Number PC 2019-7916.[9] *Id*.

11. The state court proceeding has not been withdrawn or dismissed. (ECF No. 87, May 20, 2020 Hr'g Tr. 30:12-21).

12. Codie filed the Motion on April 28, 2020. (ECF No. 57).

## ARGUMENTS

Codie's position is straightforward and concise. Both Applebaum and Kailey were on actual notice of the case. Therefore, the fact that she was not originally scheduled is irrelevant. Applebaum's collection actions, on behalf of Kailey, violate the discharge injunction and thus, both should be held in contempt and sanctioned.

Applebaum's position is not entirely clear. He offers a potpourri of arguments, many of which are not relevant to the question of Section 524 liability. He submitted a document titled "Richard B. Applebaum's Memorandum of Law in Support of the Entry of Summary Judgment

---

[7] Collection Letter 1 specifically acknowledges the bankruptcy discharge.

[8] Collection Letter 2 indicates that they had not received a response to Collection Letter 1. Applebaum writes, "If a response is not received by close of business on April 26, 2019, there is a strong likelihood that suit will be instituted against you." *Id.*

[9] Count I of the Complaint alleges that pursuant to a family agreement, Codie was to repay a Parent PLUS Loan that Jeffrey obtained for him to attend college. The Complaint continues that due to the default, Kailey paid a higher interest rate on her loan. The Complaint states in unambiguous terms "[d]efendant owes Plaintiff Thirty-Four Thousand One Hundred and Ninety-two and 99/100 ($34,192.99) dollars on account of Defendant's breach of his loan agreements…." Counts II and Count III posit a third-party beneficiary claim and quantum merit claim respectively and all counts seek the same monetary judgment.

in His Favor.[10] (ECF No. 67). It appears his basic argument is that because written notice of the discharge was never provided to Kailey, her debt was not discharged. *Id.* He states, "Having never been apprised of her rights, the Discharge granted in this case could not have included the debt owed to her."[11] *Id*.

Applebaum also argues that Codie's attorney violated Federal Rule of Bankruptcy Procedure 9011(b)(2).[12] He further poses a question regarding unscheduled creditors in a no asset chapter 7 case *vis à vis* the discharge.[13] Finally, Applebaum states, "Given my very limited participation in bankruptcy law matters, having some limited First Circuit experience with debtors reopening of cases in bankruptcy to discharge additional debt, and given no clear direction provided by the Second Circuit, it cannot be said that my conduct has actually violated a court order in this matter." *Id*.

Additionally, at oral argument, Applebaum asserts, "There has to be a distinction between notice of a bankruptcy and notice of discharge. There has been no discharge in this case, and there's a reason that this debtor needs to have a written notice, a valid reason." (ECF No. 87, May 20, 2020 Hr'g Tr. 6:1-5). In conclusion, Applebaum claims there is not a violation of the discharge injunction because Codie's attorney had a duty to inform him of Second Circuit law. *Id.* at 21:9-15.

---

[10] No motion for summary judgment was filed by Applebaum or Kailey in this matter.

[11] These statements conflict with the stipulated fact that Kailey's debt is discharged. *See* Fact Number 6.

[12] No triggering motion pursuant to Fed. R. Bankr. P. 9011 (c)(1)(A) was filed.

[13] The relevance of this point to the Section 524 violation issue is not apparent. There are differing schools of thought on the issue of omitted creditors in a no asset chapter 7 proceeding. However, in this case, the question is an academic one as it is stipulated that any debt owed to Kailey is discharged. The omitted creditor/no asset analysis is perhaps more pertinent to a *Taggart* response. *See infra*.

Kailey responds to the Motion by letter dated May 9, 2020 which offers no legal argument. (ECF No. 68). The correspondence restates certain facts and background. She states she never received written notice of the bankruptcy filing or the discharge. Kailey concludes by stating, "I have strictly followed the legal advice provided to me by Attorney Richard B. Applebaum in order to recoup my losses." *Id.*

## DISCUSSION

The issue framed by the Motion is whether Applebaum and Kailey disregarded the discharge injunction. The answer is yes, multiple times. Additionally, the state court action continues.

### Standard for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court should grant summary judgment to the moving party if it determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting F.R.C.P. 56(c)) (internal quotation marks omitted). When reviewing a motion for summary judgment "the inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *In re Medical X-Ray Film Antitrust Litig.*, 946 F.Supp. 209, 216 (E.D.N.Y. 1996). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the

motion." *Smith v. Goord*, No. 9:06-CV-401, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd in part, remanded in part*, 375 F. App'x 73 (2d Cir. 2010).

If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significantly probative" evidence that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal citations and quotation marks omitted). In the present case, Codie has met his burden; Applebaum and Kailey have not. There is no genuine dispute of material fact.

### The Discharge and the Discharge Injunction

The discharge injunction is the centerpiece of the bankruptcy process. It has been stated countless times that "[t]he fundamental purpose of bankruptcy law is to provide a "fresh start" to the "honest but unfortunate debtor." To that end, "the discharge injunction is essential to ensuring that those debtors enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *In re Dogar-Marinesco*, Case No. 09-35544, 2016 Bankr. LEXIS 4111, at *14 (Bankr. S.D.N.Y. Dec. 1, 2016) (citing *Marrama v. Citizens Bank,* 549 U.S. 395 (2007); *Cohen v. La Cruz*, 523 U.S. 213 (1998) and *Grogan v. Garner*, 498 U.S. 279 (1991).

"Pursuant to Section 727(b), a discharge in a Chapter 7 case discharges a debtor from all debts arising before the filing of the bankruptcy petition, except those that are excepted from discharge."[14] *Carvalho v. Sokoloff*, 2:18-CV-00277, 2019 U.S. Dist. LEXIS 20118, at *3 (E.D.N.Y. Feb. 7, 2019). "The discharge of a debt pursuant to [Section] 727 triggers the

---

[14] Neither Applebaum nor Kailey argues that the discharge exceptions contained in 11 U.S.C. § 523 are applicable.

operation of [Section] 524, which protects the debtor from any personal liability on the debt." *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992). As stated *supra*, Section 524 prohibits not only the commencement of an action but also its continuation. "[W]hen a creditor learns of a discharge violation, it has an affirmative duty to correct that violation." *In re Dogar-Marinesco*, 2016 Bankr. LEXIS 4111, at *21; *see also Faden v. Segal (In re Segal)*, BAP Nos. CC-14-1175-KuPaTa, CC-14-1224-KuPaTa, 2015 Bankr. LEXIS 286, at *20 (B.A.P. 9th Cir. Jan. 29, 2015) (finding that when the creditor learned of the discharge order that "he had an ongoing and affirmative duty after that point to unwind the effects of his discharge injunction violation"). Thus, "[t]he onus is on the creditor to inform other courts…and to discontinue any pending proceedings…." *Grinspan v. Grinspan (In re Grinspan)*[15], 597 B.R. 725, 733-34 (Bankr. E.D.N.Y. 2019) (citation omitted).

To establish a violation of Section 524(a)(2), the debtor must demonstrate by "clear and convincing evidence that [the creditor] knew of the Discharge Order and thereafter knowingly violated the discharge injunction by trying to collect on [the debtor's] discharged personal liability." *In re Haemmerle*, 529 B.R. 17, 27 (Bankr. E.D.N.Y. 2015).

With full knowledge of the discharge, Applebaum and Kailey commenced certain acts (Collection Letters 1 & 2) leading to an action (the state court proceeding) to collect Kailey's debt as a personal liability of the Debtor. Moreover, the state court action continues to date; thus, both ends of Section 524(a)(2) have been violated. Applebaum knew or should have known of the potential consequences. "Maintaining legal action to recover a debt is, by

---

[15] The Court recognizes that the *In re Grinspan* decision deals with 11 U.S.C. § 362, the automatic stay provision. However, the automatic stay terminates at discharge invoking the discharge injunction and therefore, the analysis as to the entity with the burden to rectify a violation is the same. *See In re Fucilo*, Case No. 00-36261, 2002 Bankr. LEXIS 475, at *17 (Bankr. S.D.N.Y. Jan. 24, 2002).

definition, conduct precluded by the discharge injunction…." *In re Nocek*, 2020 Bankr. LEXIS 978, at *11 (Bankr. E.D.N.C. Apr. 7, 2020).  Based upon the above, the *Haemmerle* test is met.

Applebaum states that the alleged debt owed to Kailey was not discharged because she did not receive actual notice of discharge.  (ECF No. 65).  However, Applebaum overlooks the crucial fact that he and Kailey received notice of the filing from Jeffrey well before the discharge was entered.  This fact cannot simply be erased because knowledge of the bankruptcy filing invokes certain responsibilities.  "[U]pon receipt of notice or knowledge of a Chapter 7 case, creditors must affirmatively protect their rights by informing themselves of applicable deadlines and timely filing complaints to except their claims against the debtor from discharge.  The informed creditor's duty to act timely insures the finality of the discharge granted to the honest and responsible debtor…." *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (B.A.P. 10th Cir. 2003); *see also Garcia v. North Star Capital Acquisition, LLC (In re Garcia)*, Bankr. Case No. 09-54517, Chapter 7, Adv. No. 11-05149, 2013 Bankr. LEXIS 404, at *21-22 (Bankr. W.D. Tx. Jan. 31, 2013) ("Constructive notice may be defined crudely, as a rule which if you should have known something, you'll be responsible for what you should have known."); *In re Nassoko*, 405 B.R. 515, 522 (Bankr. S.D.N.Y. 2009) ("[A]ctual or constructive knowledge of the discharged debt will suffice to find a party in violation of the discharge injunction.").

Applebaum provides the Court with no legal authority which indicates, Codie or his attorney had an affirmative duty to inform him of Second Circuit law.  Moreover, this statement directly conflicts with an attorney's duty of competence.  "Under the rules governing professional conduct [an attorney] had an obligation to educate himself enough about bankruptcy to protect his clients' interests.  This might have involved something as minor as reaching out to

any bankruptcy attorney he knew or could find, which attorney would have immediately advised [him]…that he was violating the discharge injunction." *In re Schwartz*, Case No. 12-37089, 2020 Bankr. LEXIS 1558, at *11-12 (Bankr. S.D. Fla. June 12, 2020).

Regarding Kailey's contention that she was relying on Applebaum's legal advice, it is well settled that "clients must be accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993); *see also In re Greenberg*, 526 B.R. 101, 105 (Bankr. S.D.N.Y. 2015) (finding that "when a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal…that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency" exists) (citation omitted). Here, Applebaum was representing Kailey in the state court action and there is a sufficient nexus for liability to be ascribed to her. The collection actions taken by Applebaum, on behalf of Kailey, are clear examples of violations of the discharge order. Kailey's misplaced reliance on Applebaum's legal advice does not absolve her of liability for contravening the discharge injunction.

**Sanctions for Violation of the Discharge Injunction Pursuant to *Taggart v. Lorenzen***

"Civil contempt, imposed under the court's section 105 powers, is the normal sanction for violations of the discharge injunction." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (16th ed. 2020). Recently, the Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) ruled:

> [A] court may hold a creditor in civil contempt for violating the discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct may be lawful.

The Court continued:

> Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates the discharge order based upon an objectively unreasonable understanding of the discharge order or the statutes that govern its scope.
> *Id.* at 1802.

In effect, *Taggart* "clarifies that the standard to find civil contempt is objective, but subjective good or bad faith may affect the size of the range of losses attributable to the noncompliance with the injunction. Bad faith may widen the range of what is compensatory…Good faith may narrow the range." *In re LaGrand*, 612 B.R. 604, 613 (Bankr. E.D. Cal. 2020) (citations omitted).

It is obvious that Applebaum and Kailey violated Section 524(a)(2) multiple times. However, it is not as apparent, after *Taggart*, whether or not the collection activities are punishable by contempt.

To date, Applebaum's submissions have been unfocused. Therefore, to ensure clarity of the record and that all arguments are properly addressed, the Court will allow Applebaum and Kailey until December 4, 2020 to provide the Court with submissions as to how the actions taken or not taken in this case were "objectionably reasonable" pursuant to the *Taggart* decision.

### The Continuing Violation of Section 524

The continuation of the collection lawsuit is an ongoing violation of Section 524. Applebaum and Kailey have stipulated that the debt owed to her was discharged, yet the state lawsuit still exists. There is no "fair ground of doubt" as to whether the discharge injunction bars the continuation of the collection proceeding. It does. Applebaum and Kailey cannot twist or turn *Taggart* to alter this conclusion. The ongoing collection activities must cease immediately. Therefore, the Court will direct Applebaum and Kailey to dismiss or discontinue the Rhode

Island lawsuit forthwith. They are ordered to provide proof of same to the Court by November 23, 2020.[16]

## CONCLUSION

The Court having held a hearing on the Motion May 20, 2020 and after due deliberation; and based on the foregoing, the Court finds Collection Letters 1 & 2, the commencement and continuation of the state court lawsuit are separate and distinct acts in violation of Section 524(a)(2). Accordingly, the Motion is **GRANTED** as to Applebaum's and Kailey's culpability regarding violations of the discharge injunction. Therefore, it is hereby

**ORDERED**, Applebaum and Kailey are required to immediately dismiss or discontinue the state court proceeding and provide proof of same to Debtor and this Court by **November 23, 2020**. Proof shall be provided to the Court by mailing to and receipt by the Bankruptcy Clerk's Office with a copy mailed to Codie's attorney; and it is further

**ORDERED**, Applebaum and Kailey have until **December 4, 2020** to provide the Court with submissions as to why the actions taken or not taken in this case were "objectionably reasonable" pursuant to the *Taggart* standard. The pleadings are limited to only this issue and are to be received by the Clerk's office by close of business on **December 4, 2020**;

**ORDERED**, if after review, the Court finds the *Taggart* submission credible, Codie will be given an opportunity to respond. If the Court does not find the submission falls within the *Taggart* parameters, an inquest on damages will be scheduled; and it is further

---

[16] Applebaum argues that in Rhode Island Superior Court he cannot unilaterally withdraw or discontinue an answered complaint. In this case that hurdle is not an issue as Codie did not interpose an answer in the lawsuit. The ability to terminate the proceeding is completely within Applebaum's and Kailey's control.

**ORDERED**, this Court retains jurisdiction to all matters arising from or related to the terms, conditions, and enforcement of this Order.

Dated: November 4, 2020
      Albany, NY

/s/ Robert. E. Littlefield, Jr.
Robert E, Littlefield, Jr.
United States Bankruptcy Judge
