UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

          CODIE B. SOUTHWORTH,

                             Debtor.

Case No. 18-11922
Chapter 7

APPEARANCES:

Michael Leo Boyle, Esq.
Attorney for Debtor
Boyle Legal, LLC
64 2nd Street
Troy, NY 12180

James F. Selbach, Esq.
Attorney for Debtor
Selbach Law Offices, P.C.
8809 Daylight Drive
Liverpool, NY 13090

Jeffrey B. Southworth, *Pro Se*
111 Oswald Street
Pawtucket, RI 02861

Kailey Southworth, *Pro Se*
111 Oswald Street
Pawtucket, RI 02861

Richard B. Applebaum, Esq., *Pro Se*
1243 Mineral Spring Avenue, Suite 201
North Providence, RI 02919-4912

Richard B. Applebaum, Esq., *Pro Se*
6 Power Avenue
Johnson, RI 02921

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Currently before the Court are two fee applications of James F. Selbach, Esq. ("Selbach") for representation[1] of Codie Southworth ("Debtor" or "Codie") in these discharge violation matters. (ECF Nos. 252 & 256). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(J) and 1334(b).[2]

## BACKGROUND/FACTS

What began as a straightforward § 524 motion became a complex and protracted contested matter due, in large part, to strong personalities on both sides. Familiarity with the underlying details of this case is presumed. However, a brief recital of the facts pertinent to the current decision follows.

On October 31, 2018, Codie filed a chapter 7 petition and an order granting the discharge ("Discharge Order") was entered on February 25, 2019. (ECF Nos. 1 & 12). Initially, Michael Boyle, Esq. ("Boyle") represented Codie from the filing of the petition through the original closing of the case on March 19, 2019. In September 2019, Boyle referred the Debtor to Selbach and a "Notice, Disclosure and Consent to Employment of Counsel and Division of Attorneys' Fees" ("Fee-Sharing Agreement") was circulated and signed by Boyle, Selbach and the Debtor. (ECF No. 227, Ex. A). How the shared fees will be allocated is included in the "Disclosure of Compensation of Attorney for Debtor," filed pursuant to Federal Rules of Bankruptcy Procedure

---

[1] Pursuant to Selbach's Rule 2016(b) statement, his representation of the Debtor is limited to Kailey Southworth's § 524 matter. (ECF No. 20).

[2] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2023) (the "Bankruptcy Code").

("Rule") 2016(b).[3] (ECF No. 20). The Rule 2016(b) statement and Fee-Sharing Agreement detail the fee structure ("Fee Structure") utilized by Selbach to remunerate the referring attorney and, in some cases, the client. (ECF Nos. 20 & 227, Ex. A).

On September 12, 2019, Selbach filed an ex-parte application to reopen the case and soon after its granting, entered a motion seeking sanctions against attorney Richard B. Applebaum, Esq. ("Applebaum") and Kailey Southworth ("Kailey") for initiating a collection action in violation of Codie's discharge injunction. (ECF Nos. 15, 16 & 17). On or about November 5, 2019, Applebaum submitted an offer to settle ("Settlement Offer") to Selbach seeking to resolve Kailey's involvement by her admitting to a violation and discontinuing the lawsuit. (ECF Nos. 38 & 252, Ex. 1). Applebaum also offered to admit to the violation and pay a sanction of $501.00. *Id*. The Settlement Offer was not accepted. (ECF No. 252 at ¶ 20).

On May 22, 2020, Selbach filed a new motion seeking sanctions against Applebaum and Jeffrey B. Southworth ("Jeffrey") after Selbach learned Jeffrey's prepetition collection action, in Rhode Island State Court, had not been discontinued. (ECF No. 73). On November 4, 2020, the Court found Applebaum and Kailey and separately Applebaum and Jeffrey in violation of the discharge injunction by commencing (Kailey) and continuing (Jeffrey) collection activities against the Debtor in contravention of § 524. (ECF Nos. 99 at 12 & 100 at 7).

---

[3] Rule 2016(b) is titled "Disclosure of Compensation Paid or Promised to Attorney for Debtor" and states in relevant part:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief . . . the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016(b).

As the United States Supreme Court had recently rendered its decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019) (establishing an "objectively reasonable basis" standard for a creditor's conduct in making a finding of civil contempt), Applebaum, Jeffrey and Kailey were provided an opportunity to address its implications on a finding of contempt, if any. *Id.* On November 18, 2020, Jeffrey submitted a letter reply indicating, based upon his interpretation of the Discharge Order, he did not believe his lawsuit against the Debtor had to be discontinued. (ECF No. 103). Jeffrey also indicates he was following the legal advice of Applebaum with regard to all issues. *Id*. The Court treated this letter as Jeffrey's *Taggart* reply and after analysis, found the submission unpersuasive. (ECF Nos. 135 & 156). Also on November 18, 2020, Kailey filed a letter disagreeing with this Court's findings and timely filed a notice of appeal. (ECF No. 105). When Kailey filed her appeal, she did not request a stay pending appeal.[4] On November 19, 2020, Applebaum filed an untimely notice of appeal of the same decision.[5] (ECF No. 111). Notably, neither Applebaum nor Kailey chose to address *Taggart*.

On January 21, 2021, the Court found Applebaum and Kailey in contempt for violating § 524 and set an inquest on damages. (ECF No. 153 at 2-3). Similarly, on January 22, 2021, the Court found Applebaum and Jeffrey in contempt for violating the discharge injunction and scheduled a damages hearing. (ECF No. 156 at 6). On January 25, 2021, Selbach withdrew the Debtor's claim for actual damages in both matters leaving Selbach's fees as the only requested monetary sanction. (ECF No. 162).

---

[4] On January 11, 2021, Kailey filed a "Motion for Stay" which she scheduled to be heard on June 23, 2021. (ECF Nos. 147 & 148). The request was denied based upon Kailey's failure to appear and the absence of any analysis of the factors necessary to obtain a stay in this jurisdiction. (ECF No. 307).

[5] On December 28, 2020, Applebaum filed a "Motion for Stay" on behalf of himself and Kailey, scheduling a hearing on January 13, 2021. (ECF Nos. 142 & 143). The request was denied as the pleadings did not address the standard necessary to obtain a stay pending an appeal in this Circuit. (ECF Nos. 197 & 201). Moreover, Applebaum is not admitted in the Northern District of New York and therefore is unable to represent Kailey in this Court.

-4-

On March 26, 2021, Selbach filed a fee application with respect to Applebaum and Kailey ("KS Fee Application") seeking $67,080.00 in attorney's fees and $839.20 in expense reimbursement. (ECF No. 252 at ¶ 121). On the same day, Selbach filed a fee application attributable to Applebaum and Jeffrey ("JS Fee Application") seeking $5,040.00 in attorney's fees but did not request reimbursement of costs. (ECF No. 256 at ¶ 121).

On January 18, 2022, Applebaum and Kailey each submitted opposition to the KS Fee Application and Applebaum submitted opposition to the JS Fee Application. (ECF Nos. 374, 375 & 376). The next day, Jeffrey filed an objection to the JS Fee Application. (ECF No. 377). Selbach then filed a response and the matter became fully submitted. (ECF No. 378).

## ARGUMENTS

Regarding the KS Fee Application, Selbach asserts a substantial portion of the attorney's fees were incurred responding to multiple unconventional motions made by Applebaum. (ECF No. 252 at ¶ 9). Selbach states, "A vast majority of the time in this matter has been spent responding to frivolous arguments . . . . All of this unnecessary work lies at the feet of Attorney Applebaum. He should be required to compensate for this." *Id*. Selbach acknowledges the amount of time requested by him is "highly unusual" but argues all of this work was "reasonable and necessary given the conduct of Attorney Applebaum." *Id.* Selbach does not make any arguments regarding the conduct of Applebaum in the JS Fee Application. (ECF No. 256).

Both Jeffrey and Kailey oppose the awarding of any attorney's fees to Selbach. (ECF Nos. 376 & 377). However, they do not provide any case law or pertinent legal analysis. In addition, they do not indicate specific time requests they find objectionable. *Id*.

Applebaum has general objections to both fee applications and identifies specific entries he finds unwarranted. (ECF Nos. 374 & 375). First, he contends Selbach should not receive any

attorney's fees because the Fee Structure utilized by Selbach violates the New York Rules of

Professional Conduct ("NYRPC"). *Id.* (citing N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0,

D.R. 1.5(g) (2022)). Next, Applebaum contends Selbach was the cause of many of the hours

incurred as Applebaum attempted to settle Kailey's matter at an early stage but was rebuffed.

(ECF Nos. 38 & 374 at ¶ 10). Finally, Applebaum objects to numerous specific time entries in

each fee application as "[lacking] sufficient description, and/or documentary proof . . . ." (ECF

Nos. 374 at ¶ 108 & 375 at ¶ 7).

## DISCUSSION

It is axiomatic, "the discharge injunction is essential to ensuring that [honest but

unfortunate] debtors 'enjoy "a new opportunity in life with a clear field for future effort,

unhampered by the pressure and discouragement of preexisting debt."'" *In re Dogar-Marinesco*,

No. 09-35544, 2016 Bankr. LEXIS 4111, at *14 (Bankr. S.D.N.Y. Dec. 1, 2016) (quoting

*Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244

(1934))). However, courts are cautioned, "Section 524 violation hearings are not an excuse to run

up attorney fees, particularly when an issue is easily resolved. . . . [S]uch hearings are not to be a

cottage industry of litigation." *Lassiter v. Moser (In re Joseph Moser)*, No. 09-8067, 2010 Bankr.

LEXIS 3996, at *23 (B.A.P. 6th Cir. Nov. 23, 2010) (citation omitted).

It is the bankruptcy court's obligation to balance these competing interests.

## I.    THE FEE-SHARING AGREEMENT.[6]

When determining the propriety of Selbach's Fee Structure, the Court looks to New

York's laws governing attorney conduct. *See Almukthar v. S & A Trading USA Inc.*, No. 21-CV-

---

[6] The Court notes § 504 of the Bankruptcy Code prohibits certain fee sharing. 11 U.S.C. § 504. However, that section was not raised or briefed. Therefore, the Court will limit its analysis to the matters argued by the parties.

190, 2022 U.S. Dist. LEXIS 212200, at *5-6 (N.D.N.Y. Nov. 22, 2022). NYRPC Disciplinary

Rule 1.5, entitled "Fees and Division of Fees," provides in pertinent part:

> (g) A lawyer shall not divide a fee for legal services with another lawyer who is not
> associated in the same law firm unless:
>> (1) the division is in proportion to the services performed by each lawyer or, by
>> a writing given to the client, each lawyer assumes joint responsibility for the
>> representation;
>> (2) the client agrees to employment of the other lawyer after a full disclosure
>> that a division of fees will be made, including the share each lawyer will
>> receive, and the client's agreement is confirmed in writing; and
>> (3) the total fee is not excessive.

N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0, D.R. 1.5(g) (2023).

At first blush, the Fee-Sharing Agreement[7] entered into by Selbach, Boyle and the Debtor

appears to meet the requirements of NYRPC Disciplinary Rule 1.5(g). It clearly states Selbach

and Boyle undertake "joint responsibility"[8] for Codie's representation and is signed by the client.

(ECF No. 227, Ex. A). However, the Fee-Sharing Agreement is structured in such a way that it

---

[7] The Fee-Sharing Agreement states:

> Offender: Kailey Southworht [sic] and Richard B. Applebaum, Esq.
> Client: Codie B. Southworth
>
> This is to advise you that Selbach Law Offices, P.C. ("Selbach") will be employed
> in this matter together with Michael L. Boyle, Esq. ("General Counsel"). In addition, there will
> be a division of attorneys' fees between Selbach Law Offices, P.C. and General Counsel, who
> both hereby assume joint responsibility for your representation in this matter. General Counsel
> shall receive 25% of attorneys' fees. Selbach shall receive 75% of attorneys' fees.
>
> By signing below, you consent to the employment of Selbach Law Offices, P.C., the
> terms and conditions set forth in the Agreement to Hire Attorney and Acknowledgment, and
> the division of attorneys' fees.

(ECF No. 227, Ex. A) (emphasis in original).

The Court's docket does not indicate the "Agreement to Hire Attorney and Acknowledgment" was filed.
Consequently, the Court is unable to determine if it meets the requirements of the Bankruptcy Code, Rules and
Local Bankruptcy Rules.

[8] Selbach's time records reflect Boyle's participation was limited to a single direct phone call between Boyle and
Selbach occurring on September 11, 2019 and a September 1, 2019, teleconference which Boyle may or may not
have attended. (ECF Nos. 252, Ex. 1 & 256, Ex. 1). Thus, it is unclear what the attorneys intended by "assum[ing]
joint responsibility . . . ." (ECF No. 227, Ex. A).

creates a likelihood of attorneys' fees becoming excessive in violation of NYRPC Disciplinary

Rule 1.5(g)(3). As noted by Judge Cangilos-Ruiz:

> Prior to addressing the reasonableness of the attorney's fees sought in this matter, the court observes that the fee structure employed in this case (and other similar cases handled by Attorney Selbach) has the predictable effect of inhibiting early settlement of such motions at reasonable settlement amounts, thereby unnecessarily increasing attorney's time and fees on both sides of the aisle. . . . [I]t appears fair to infer that this fee structure is likely to drive an "acceptable" settlement amount upward in a manner divorced from the actual value of the claim. . . .
> This arrangement disincentivizes settlement of motions for sanctions where the violation is non-egregious such that punitive damages are unavailable and a claim for emotional distress damages is unlikely to be proven, *i.e.*, a classic example of a case that should be settled for a nominal amount.

*In re Hall*, 518 B.R. 202, 207-08 (Bankr. N.D.N.Y. 2014).

Much like the *Hall* case, the violations here should have been settled for a nominal amount.

Instead, Selbach requests approximately $68,000.00 in the KS Fee Application and over

$5,000.00 in the JS Fee Application despite Codie's claims for actual damages having been

withdrawn. (ECF Nos. 162, 252 & 256).

Finally, the Debtor signed the Fee-Sharing Agreement knowing he would never be

responsible to pay either Boyle or Selbach.[9] Thus, the normal guardrails established to reign in

excessive fees are not present. The Debtor becomes disinterested as he is neither entitled to

money damages from the violation nor does he incur attorney's fees to have the matter pursued.

Likewise, after Boyle referred Codie to Selbach, Boyle simply awaits his portion of the fees

accruing through Selbach's litigation. The practical effect of the referral and Fee Structure is to

place Selbach at the helm of the ship with neither the Debtor nor Boyle necessarily paying

attention to his navigating. The longer the voyage lasts, the greater Selbach's compensation

becomes.

---

[9] Selbach's Rule 2016(b) disclosure states, "This award would be paid by the Offender and not the Client." (ECF No. 20).

A.    **The Referral From Boyle To Selbach.**

It is settled, "[t]o constitute legal work that is compensable pursuant to a fee-sharing

agreement, '[m]ore involvement is required of a referring attorney than merely having

recommended the subsequent lawyer.'" *Ginarte v. Law Offs. of Rex E. Zachofsky, PLLC*, No.

158422, 2017 N.Y. Misc. LEXIS 2623, at *5 (N.Y. Sup. Ct. July 5, 2017) (quoting *Alderman v.

Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999)), *aff'd*, *O'Dwyer v. Law Offs. of Rex E.

Zachofsky, PLLC*, 93 N.Y.S.3d 846, 847 (N.Y. App. Div. 2019). Boyle has not appeared for any

conference or motion since this case was re-opened. Moreover, the Fee-Sharing Agreement

indicates Boyle is "General Counsel," however, the version provided indicates Boyle retained the

"Referring Attorney Copy." (ECF No. 227, Ex. A). Based upon the plain language of the Fee-

Sharing Agreement along with Boyle's nonappearance throughout these § 524 matters, the Court

concludes Boyle merely recommended Codie contact Selbach to handle these violations. This is

insufficient to support the division of fees. *Ginarte*, 2017 N.Y. Misc. LEXIS 2623, at *5.

Therefore, the Court declines to award Boyle any compensation for referring his client to

Selbach.

B.    **The Fee Structure Impermissibly Splits Attorney's Fees With The Debtor.**

The Fee Structure utilized by Selbach violates NYRPC Disciplinary Rule 5.4(a), titled

"Professional Independence Of A Lawyer," which directs that "[a] lawyer or law firm shall not

share legal fees with a nonlawyer . . . ." *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0,

D.R. 5.4(a) (2023). Despite this professional dictate, the Rule 2016(b) statement clearly indicates

the Debtor could receive a portion of the fees, stating in relevant part:

> (1) Attorneys' Fees Based on Total Amount Recovered[.] The calculation of the
> amount to be distributed is done in the following manner. First, costs are deducted
> from the total amount of money recovered. Next, *$300 is deducted to be paid to the
> Client* and $1,000 is deducted to be paid to the Attorneys. *The Client and the*

*Attorney then each receive 50% of whatever, if any, funds are remaining after these deductions.*

(ECF No. 20) (emphases added).

There are exceptions to this professional standard but none apply here.

### C.    Selbach's Pecuniary Interest In These Matters.

As legal fees cannot be shared with a nonlawyer, once Selbach withdrew the Debtor's claims for actual damages the attorney – not the client – became the only person potentially receiving money in this matter. This is highly problematic as "[a] lawyer is under an ethical obligation to exercise independent professional judgment on behalf of his client; he must not allow his own interests, financial or otherwise, to influence his professional advice." *Evans v. Jeff D.*, 475 U.S. 717, 728 n.14 (1986) (citations omitted). Selbach was the only one who would benefit from the continuation of the matters, raising the appearance of impropriety because arguably his pecuniary interests influenced the manner in which these § 524 violations were litigated and eventually resolved.

### D.    Reasonable Fee Award.

For the reasons stated, the Fee Structure raises many concerns.[10] However, Applebaum's commencing of a collection action on Kailey's behalf with actual knowledge of Codie's discharge is the exact type of creditor conduct § 524 is meant to prevent. *See Anderson v. Credit One Bank, N.A. (In re Anderson)*, 641 B.R. 1, 44 (Bankr. S.D.N.Y. 2022) (observing that courts have found granting attorney's fees especially appropriate where a creditor "go[es] forward with collection activity knowing or having reason to know that the debtor was in bankruptcy and has received a discharge." (quoting *In re Haemmerle*, 529 B.R. 17, 29-30 (Bankr. E.D.N.Y. 2015))). Therefore, despite its concerns, the Court will determine a reasonable fee award. *See, e.g.,*

---

[10] The Court has approved stipulations of settlement proffered by Selbach in several prior unrelated matters. However, the propriety of the fee sharing was never raised.

-10-

*Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.)*, 210 B.R. 19, 23 (B.A.P.

2d Cir. 1997) ("Bankruptcy courts enjoy wide discretion in determining reasonable fee awards . .

. .") (citations omitted).[11]

## II.    THE LODESTAR ANALYSIS.

In determining a presumptively reasonable fee award, the Second Circuit utilizes a

modified lodestar approach which includes in its analysis the twelve relevant factors ("*Johnson*

factors") originally enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,

717-19 (5th Cir. 1974).[12] *See, e.g.*, *Gortat v. Capala Bros.*, 621 F. App'x 19, 22 (2d Cir. 2015)

(reviewing an attorneys' fee award under the Lodestar approach and the *Johnson* factors). The

Second Circuit explains:

> We think the better course -- and the one most consistent with attorney's fees
> jurisprudence -- is for the district court, in exercising its considerable discretion, to
> bear in mind all of the case-specific variables that we and other courts have
> identified as relevant to the reasonableness of attorney's fees in setting a reasonable
> hourly rate. The reasonable hourly rate is the rate a paying client would be willing
> to pay. In determining what rate a paying client would be willing to pay, the district
> court should consider, among others, the *Johnson* factors; . . . . The district court
> should also consider that such an individual might be able to negotiate with his or
> her attorneys, using their desire to obtain the reputational benefits that might accrue
> from being associated with the case. The district court should then use that
> reasonable hourly rate to calculate what can properly be termed the "presumptively
> reasonable fee."

---

[11] Second Circuit authority exists for attorneys to be paid, if facts warrant, despite a breach of a disciplinary rule.
"Generally, where the misconduct is unrelated to the services performed . . . an attorney may still be entitled to
recover on a quantum meruit basis." *Realuyo v. Diaz*, No. 98 CV 7684, 2006 U.S. Dist. LEXIS 11420, at *26
(S.D.N.Y. Mar. 17, 2006) (citing *Joseph Brenner Assocs., Inc. v. Starmaker Ent., Inc.*, 82 F.3d 55, 58-59 (2d Cir.
1996).

[12] The twelve *Johnson* factors are:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill
> required to perform the legal service properly; (4) the preclusion of employment by the attorney due
> to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or
> contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the undesirability of the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*Shepherd v. Law Offs. of Cohen & Slamowitz, LLP*, No. 08 CV 6199, 2010 U.S. Dist. LEXIS 125224, at *6 n.3
(S.D.N.Y. Nov. 24, 2010) (citing *Johnson*, 488 F.2d at 717-19).

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).

### A.     The Reasonable Hourly Rate.

Applying the *Johnson* factors,[13] the Court finds Selbach's hourly rate of $300.00 to be reasonable. First, Selbach has been practicing bankruptcy law for years and is experienced in § 524 matters. (ECF No. 252 at ¶ 9). In addition, $300.00 is his customary hourly rate and the fee is contingent upon Selbach's efforts leading to the cessation of the violation. Thus, *Johnson* factors five, six and nine support the hourly rate requested. Finally, *Johnson* factor twelve supports the hourly rate as $300.00 per hour is within the range of fees routinely granted in this Court.[14]

### B.     The Hours Reasonably Expended.

Once the reasonable hourly rate is determined, the Court must decide the appropriate amount of time spent on a matter while "bear[ing] in mind that a reasonable, paying[15] client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. Additionally, "[i]n determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours . . . ." *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987, 2022 U.S. Dist. LEXIS 25036, at *34 (S.D.N.Y. Feb. 9, 2022) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).

---

[13] Several of the *Johnson* factors are applicable to both the reasonable hourly rate as well as the hours reasonably expended.

[14] The following are examples of hourly rates approved in this Court: *In re Interstate Commodities, Inc.*, No. 20-11139 (fees ranging from $250.00 to $750.00 per hour for attorney time); *In re Red Hook Solar Corp.*, No. 21-10759 ($325.00 per hour for attorney time); and *In re Creative Encounters, LLC*, No. 22-10533 ($325.00 per hour for attorney time).

[15] The *Arbor Hill* standard also applies to fee-shifting matters such as the present one. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) ("[T]he 'lodestar' figure has . . . become the guiding light of our fee-shifting jurisprudence." (citation omitted)).

The *Johnson* factors support the Court reducing the hours approved. The time required in a § 524 matter is normally not extensive. The issue is not novel or difficult and the skill required to file and pursue these violations is not extraordinary. Additionally, Selbach has not provided the Court with evidence he was unable to work on other matters.[16] Thus, *Johnson* factors one, two, three and four support reducing the attorney hours. Codie did not suffer any actual damages in this matter and the Court is convinced these discharge violations could have been rectified far earlier but for Selbach's own actions. Thus, *Johnson* factor eight further supports reducing Selbach's requested hours.

Selbach was surprised to learn of Jeffrey's pre-petition lawsuit despite the petition clearly listing all the information pertaining to same. (ECF No. 87 at 30). Therefore, his knowledge of the facts of the case and his relationship with the Debtor were not extensive. Next, most discharge injunction matters are resolved relatively quickly and no attorney has ever requested the Court approve the amount of time that Selbach does here for a § 524 matter. Accordingly, *Johnson* factors eleven and twelve do not support the hours requested by Selbach.

## III.    THE KS FEE APPLICATION.

Selbach did not fulfil the requirement to categorize his fee requests. *See* Local Bankruptcy Rule 2016-1(a). To aid its analysis, the Court distilled and generally categorized the requests. Any entry not individually addressed or granted is denied as being vague, lumped, excessive and/or unnecessary.

First, Selbach requests attorney's fees for a "[t]elephonic conference," to "[r]eview documents received from counsel," and a "[p]hone call with Attorney Boyle." (ECF No. 252, Ex.

---

[16] A review of the activity in the Northern District of New York from September 12, 2019, (the date the case was reopened) to March 26, 2021, (the date the fee applications were submitted) indicates Selbach filed 123 motions in the Northern District of New York (Albany, Syracuse and Utica divisions).

1). These are denied. It is settled, "[a] reduction in fees is thus warranted, to the extent that these fees reflected work by [the law firm] as new counsel to 'get up the learning curve,' as such work, while reasonably commissioned, is not reasonably passed along to an adversary." *U.S. Bank N.A. v. Dexia Real Est. Cap. Mkts.*, No. 12 Civ 9412, 2016 U.S. Dist. LEXIS 165268, at *31 (S.D.N.Y. Nov. 30, 2016).

Selbach requests 1.3 hours for drafting the *ex parte* application to reopen the case filed on September 12, 2019. (ECF No. 252, Ex. 1). However, he utilizes basic templates which include two pages of standard text and exhibits consisting of the "Certificate of Notice" of filing along with a copy of the purported collection violations. (ECF No. 15). Since Selbach routinely makes these motions which are virtually identical case to case,[17] he is awarded one hour ($300.00) for the *ex parte* application to reopen.

Selbach also requests 1.3 hours to draft the motion for violation of the discharge injunction. (ECF No. 252, Ex. 1). Like the *ex parte* request to reopen, the motion for violation of the discharge injunction is comprised of basic forms and exhibits which are substantially similar case to case. (ECF No. 17). Therefore, the time approved for the motion for violation of the discharge injunction is reduced to one hour ($300.00).

From September 19, 2019, to September 23, 2019, Selbach requests 3.4 hours ($1,020.00) for preparing and filing a motion to halt Applebaum and Kailey from continuing the Rhode Island action along with a companion temporary restraining order. (ECF Nos. 22 & 252, Ex. 1). While the Court declined to issue the temporary restraining order and denied the motion, they were warranted when filed. The hours requested are reasonable and allowed. Next, Selbach

---

[17] The following are examples of *ex parte* motions to reopen and motions for violation of the discharge injunction which Selbach files in his cases: *In re Gillis*, No. 21-10130 (ECF Nos. 37 & 41); *In re Roselan*, No. 21-11046 (ECF Nos. 34 & 36); *In re Stewart*, No. 19-11609 (ECF Nos. 20 & 22).

also requests 0.1 hour ($30.00) for research undertaken on September 23, 2019, relating to service of process in Rhode Island. (ECF No. 252, Ex. 1). This request is granted. However, the Court finds the 4.5 hours requested from September 25, 2019, to October 2, 2019, for preparing and filing a motion to prohibit Applebaum from representing Kailey and Jeffrey in these matters is excessive. (ECF Nos. 26 & 252, Ex. 1). Applebaum is not admitted in New York or this District and therefore, all that was required was a concise pleading. The Court grants 1.5 hours ($450.00) for this submission.

On November 5, 2019, there is a time entry described as "Review Offer of Judgment." (ECF No. 252, Ex. 1). Interestingly, it only took Selbach twelve minutes (0.2 hour) to review and apparently reject the Settlement Offer. *Id*. Further, the time records do not clearly establish when or if Codie was made aware of the Settlement Offer.[18] *Id.* There is a time entry on November 13, 2019, (eight days after the Settlement Offer was reviewed) indicating Selbach had a "Phone call with client." *Id*. Yet, there is no indication the Settlement Offer was discussed or even mentioned.[19]

In Selbach's declaration in support for the requested attorney's fees, he states:

> As is your deponent's practice, attempts were made to settle the matter. Attorney Applebaum's proposal for settlement was to simply declare the debt to Kailey discharged with no award of damages. As a discharge violation had clearly occurred, Attorney Applebaum's idea of settlement was unacceptable. Attempts at settlement were not fruitful.[20]

(ECF No. 252 at ¶ 20).

---

[18] NYRPC Disciplinary Rule 1.4, titled "Communication," dictates that an attorney must communicate settlement offers to their clients. N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0, D.R. 1.4(a)(1)(iii) (2023) ("A lawyer shall: (1) promptly inform the client of: . . . (iii) material developments in the matter including settlement or plea offers.").

[19] Selbach's time records indicate he bills for virtually every action undertaken, including ministerial tasks. (ECF No. 252, Ex. 1). Accordingly, had there been a discussion with the Debtor about the Settlement Offer when it was received, there would be a corresponding time entry: there is not.

[20] Based upon the vague time records, the Court is unable to determine what attempts to settle were made by Selbach. *Id*.

A review of the Settlement Offer[21] indicates Selbach's contention is misleading as the

Settlement Offer ceases the violation, admits liability and includes a monetary sanction.[22] With

this settlement triad present, it is unclear why the matter was not settled. At the very least, the

door to negotiations should have been opened before attorney's fees compounded. For all the

reasons stated, the 12-minute request for reviewing the Settlement Offer is denied.

Selbach also sought to depose Kailey in order to establish when she became aware of

Codie's bankruptcy filing. (ECF No. 252, Ex. 1). Prompted by Applebaum, Kailey refused to

consent to same. (ECF No. 34, Ex. G). Subsequently, Selbach filed a motion seeking an order

directing a teleconference deposition. *Id.* Selbach indicates he spent 17.9 hours on these

pleadings from November 4, 2019, through January 21, 2020. (ECF No. 252, Ex. 1). This

amount of time is excessive. Since the inception of the § 524 filing against Kailey, the one and

only outstanding question was when[23] she became aware that the Debtor had filed his petition.

---

[21] Federal Rule of Evidence 408 generally prohibits the introduction of settlement negotiations at trial. Fed. R. Evid. 408. However, "[c]ourts have consistently held that the use of settlement negotiations is permissible under the 'another purpose' exception where it was offered to show that the attorney's fees requested were unreasonable." *United States ex rel. Carranza v. Guaranteed Rate, Inc.*, No. 17-cv-637, 2021 U.S. Dist. LEXIS 24997, at *8-9 (N.D.N.Y. Feb. 10, 2021) (citations omitted).

[22] The Settlement Offer states:

Now comes Richard Applebaum, pro se, and, in accordance with Rule 68 of the Federal Rules of Civil Procedure, applicable Bankruptcy Court and local Bankruptcy Court Rules, makes the following separate offers of Judgment:

1. The prefiling debt owed by debtor Codie B. Southworth to Kailey Southworth is considered discharged.
2. Kailey Southworth, having followed my advice as Counsel, directed the filing of Providence County, State of Rhode Island Superior Court Action No. Pc 2019-7916.
3. Said Kailey Southworth is admonished and sanctioned as a consequence thereof to hereafter refrain from violating the discharge injunction in the within matter.
4. Richard Applebaum is responsible for committing a technical violation of the Second Circuit discharge injunction in the within matter and as a consequence thereof is admonished and sanctioned to pay Five Hundred One and 00/100 ($501.00) Dollars.
5. Having stated the offer contained in Paragraph 4 above, there shall be no further monetary sanctions levied against Richard Applebaum.

(ECF No. 38) (emphasis in original).

[23] The collection letters sent by Applebaum, on behalf of Kailey, to the Debtor specifically indicate knowledge of Codie's discharge. (ECF No. 17, Ex. B).

-16-

The Court will not approve the hours requested for such a narrow, discrete question. *See*

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 341

(S.D.N.Y. 2016) ("The limited nature of the [discovery] issue leads the Court to find the number

of claimed hours excessive."). The Court reduces the time allotted and approves four hours

($1,200.00) for the motion to compel discovery. In addition, the Court approves Selbach's

requests of 2.4 hours ($720.00) to prepare for Kailey's deposition as well as 1.5 hours ($450.00)

for conducting it.

On February 28, 2020, Applebaum filed a "Motion for Judgment on the Pleadings

And/Or Summary Judgment." (ECF No. 44). From March 7, 2020, through March 26, 2020,

Selbach requests 2.6 hours ($780.00) for legal research regarding the summary judgment motion

and for drafting the attorney declaration. (ECF No. 252, Ex. 1). This is reasonable and approved.

During the same time span, Selbach billed 12.7 hours for drafting the memorandum of

law in opposition to the motion for summary judgment. *Id*. This amount of time is excessive as

the memorandum is seven pages double-spaced. (ECF No. 51). Selbach is familiar with § 524

violations and it should not have taken longer than three hours to prepare this pleading. Hence,

the Court reduces the time for this submission to three hours ($900.00). The Court further finds

Selbach's request for 1.6 hours ($480.00) billed on April 8, 2020, to prepare for and argue the

summary judgment motion reasonable and approves same. (ECF No. 252, Ex. 1).

On April 28, 2020, Selbach filed a motion for partial summary judgment against

Applebaum and Kailey. (ECF No. 57). In connection with this motion, from April 16, 2020, to

April 28, 2020, Selbach indicates he spent 6.1 hours. (ECF No. 252, Ex. 1). The Court finds this

amount of time unreasonable. The elements of contempt were contained in the collection letters

and lawsuit filed by Applebaum on Kailey's behalf. The Court will grant four hours ($1,200.00) for preparing the motion for partial summary judgment.

Selbach also seeks attorney's fees for time spent on several Rule 9011 motions. *Id.* However, the Rule 9011 motions were withdrawn by Selbach, denied by the Court or an alternative sanction was imposed.[24] More importantly, the issue of attorney's fees was decided when the motions were heard. (ECF Nos. 199, 325, 357 & 384). Therefore, all time entries related to these requests are denied as being duplicative. "By seeking fees for time billed prior thereto, plaintiffs are 'double dipping.'" *See Sheet Metal Workers' Nat'l Pension Fund v. USA Roofing Co. Corp*., No. 14-cv-5850, 2016 U.S. Dist. LEXIS 41900, at *2-3 (E.D.N.Y. Mar. 29, 2016) (citations omitted).

Similarly, Selbach seeks attorney's fees for time spent on several 28 U.S.C. § 1927[25] motions. (ECF No. 252, Ex. 1). Based upon Kailey's failure to provide discovery, on May 22, 2020, Selbach filed a § 1927 motion seeking sanctions against Applebaum and Kailey. (ECF No. 70). On December 16, 2020, the Court granted the § 1927 motion and awarded Selbach $500.00 in attorney's fees. (ECF No. 136). All other hours related to this motion are denied. *See Sheet Metal Workers'*, 2016 U.S. Dist. LEXIS 41900, at *2-3. In February 2021, Selbach filed two additional § 1927 motions related to Applebaum's request to remove Selbach as counsel. (ECF

---

[24] On February 12, 2021, Selbach filed a Rule 9011 motion against Applebaum. (ECF No. 177). This motion was withdrawn on February 26, 2021. (ECF No. 199). On June 11, 2021, Selbach filed a second 9011 motion against Applebaum. (ECF No. 292). By Order dated July 8, 2021, the Court denied the motion. (ECF No. 325). On July 2, 2021, Selbach filed a third 9011 Motion, which was returnable on July 28, 2021. (ECF Nos. 318 & 319). The Court ultimately found Applebaum violated Rule 9011. (ECF No. 357). Rather than issue a monetary sanction, the Court directed Applebaum to participate in three (3) hours of Continuing Legal Education focusing on bankruptcy law and procedure. *Id*. On January 18, 2022, Selbach filed a fourth 9011 Motion, returnable on February 9, 2022. (ECF Nos. 369 & 370). On that date, the 9011 motion was denied by the Court. (ECF No. 384).

[25] 28 U.S.C. § 1927 is titled "Counsel's liability for excessive costs" and states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Nos. 185 & 190). These § 1927 motions and the within request for attorney's fees were denied by the Court on March 25, 2021. (ECF No. 243).

Following the withdrawal of Codie's claims for actual damages, a hearing was held on February 25, 2021, at which a need for additional briefing was raised to clarify whether the claim for attorney's fees had been inadvertently withdrawn as a subset of actual damages.[26] (ECF Nos. 197, 204 & 205). Related to this inquest on damages, Selbach requests 6.7 hours for preparing a memorandum of law and two attorney declarations which were filed on March 26, 2021. (ECF Nos. 252, Ex. 1, 253, 254 & 255). It is unclear what, if any, actual damages ever existed. It is also unclear what precipitated the timing of the withdrawal. Additionally, Selbach's letter withdrawing the claims is comprised of only two sentences. (ECF No. 162). As Selbach's matter-of-fact withdrawal of Codie's request for actual damages was the impetus of these additional expended hours, the Court will not remunerate him for these submissions. *See In re Yogi*, No. 13-01452, 2014 Bankr. LEXIS 3223, at *3 (Bankr. D. Haw. July 29, 2014) ("The court should not allow compensation for work that was unreasonable or was avoidable through reasonable precaution and foresight.").

Nevertheless, Applebaum filed numerous unorthodox pleadings. For instance, between December 11, 2020, and February 11, 2021, Applebaum filed four separate motions seeking a stay pending appeal, the last being filed before any had been heard. (ECF Nos. 133, 142, 159 & 182). On February 1, 2021, Applebaum withdrew the first and on February 26, 2021, the Court denied the second and third. (ECF Nos. 164, 201 & 202). On March 24, 2021, the Court denied the fourth. (ECF No. 244). Selbach requests 5.5 hours in responding to these motions. (ECF No. 252, Ex. 1). The Court finds the time excessive. Both Selbach's attorney affirmations in

---

[26] On February 26, 2021, Selbach filed a letter clarifying that the Debtor's claim for attorney's fees had not been withdrawn. (ECF No. 198). However, this letter did not obviate the need for briefing the issue.

opposition are approximately three-page double-spaced documents. (ECF Nos. 152 & 226). In addition, there were no novel or unique issues of law as the standard for obtaining a stay pending appeal is straightforward. Selbach has experience with appeals and therefore, it should not have taken 5.5 hours to respond to Applebaum's request. Finally, the exhibits make up the lion's share of the first pleading and all were readily attainable on the Court's docket. *Id.* For these reasons, the Court grants four hours ($1,200.00) for responding to Applebaum's motions to stay.

On February 8, 2021, Applebaum filed a "Motion for Removal" seeking to disqualify Selbach as attorney for the Debtor. (ECF No. 173). Selbach entered multiple responses in opposition on February 18, 2021. (ECF Nos. 190, 191 & 192). Selbach requests approval of 15.4 hours for these replies and oral argument. (ECF No. 252, Ex. 1). Applebaum's motion was, at best, difficult to understand and could not reasonably go unopposed. Nevertheless, the Court finds the requested hours excessive. For example, Selbach expended 3.95 hours to draft the memorandum of law. *Id.* A review of that pleading does not support the requested time. The memorandum is eleven double-spaced pages with a significant portion of the document dedicated to Selbach's affirmative request, which he characterizes as a "cross motion,"[27] to sanction Applebaum pursuant to § 1927. (ECF No. 191). The Court declines to approve the time requested for the reply when the bulk of the response is an improper request for affirmative relief. For these reasons, the Court approves four hours ($1,200.00).

As previously noted, Kailey timely filed an appeal of the November 4, 2020, decision and Applebaum filed a late appeal of the same decision. (ECF Nos. 99, 105 & 111). It was previously understood that a bankruptcy court could not award fees for an appeal. However, the Second Circuit recently held bankruptcy courts are authorized to award such appellate fees. *Law Off. of*

---

[27] The Court denied the request as "cross motions" are not recognized by the Federal Rules of Bankruptcy Procedure. (ECF No. 243).

*Francis O'Reilly, Esq. v. Selene Fin. L.P. (In re DiBattista)*, 33 F.4th 698, 705 (2d Cir. 2022) (finding the bankruptcy court's "contempt power encompasses the authority to 'compensate the complainant for losses stemming from the defendant's noncompliance with an injunction,' *Taggart*, 139 S. Ct. at 1801 (internal quotation marks omitted) – even if those losses take the form of appellate litigation fees[.]" (citing *Weitzman v. Stein*, 98 F.3d 717, 720-21 (2d Cir. 1996))). The Court approves the November 24, 2020, 0.3 hour and December 15, 2020, 1.1 hours related to the appeals for a combined total approval of 1.4 hours ($420.00). (ECF No. 252, Ex. 1). Since the only properly filed appeal was Kailey's, these attorney's fees ($420.00) are attributable to her solely.

Finally, the preparation of the KS Fee Application accounts for approximately 22% ($14,760.00) of the total fee requested ($67,080.00). *Id.* Based upon established case law in this Circuit, the Court has determined a reasonable percentage for the preparation of a fee application to be between 3% and 5% of the total fee awarded. *In re Gurley Hous. Assocs., L.P.*, No. 20-10712, 2021 Bankr. LEXIS 49, at *18 (Bankr. N.D.N.Y. Jan. 12, 2021) (citation omitted). Therefore, the Court will grant Selbach 4% ($409.20) of the total amount awarded for preparation of the KS Fee Application.

### IV.    THE JS FEE APPLICATION.[28]

Selbach requests compensation for 16.8 hours expended pursuing Jeffrey's § 524 matter. (ECF No. 256 at ¶ 5). As noted, on May 20, 2020, it came to light that Jeffrey's pre-petition collection case had not been withdrawn. (ECF No. 87 at 30). When given the opportunity to easily and quickly resolve the matter by having Codie sign a stipulation of discontinuance,

---

[28] The Court notes, neither Selbach nor Boyle met the requirement to file a Rule 2016(b) statement regarding representing Codie as it pertained to Jeffrey's violation. Fed. R. Bankr. P. 2016(b). This failure is not simply ministerial. *See, e.g.*, *In re Ortiz*, 496 B.R. 144, 147-48 (Bankr. S.D.N.Y. 2013).

Selbach did not.[29] Rather, he chose to file a motion for contempt needlessly complicating the situation. (ECF No. 73). At a hearing held on June 18, 2020, Selbach doubled down on the proposition that a debtor has no duty to assist in the cessation of the discharge violation. (ECF No. 86). Applebaum's objection indicated he could not withdraw Jeffrey's action because an answer had been interposed, representing that in Rhode Island "[he] was prohibited from filing anything after Answer ex-parte, without knowledge, consent and cooperation of Debtor, pursuant to applicable State and Federal Rules of Civil Procedure as well as Rules of Ethics . . . ." (ECF No. 84 at ¶ 5). Codie signed the stipulation[30] discontinuing Jeffrey's state court matter one week after this hearing. (ECF No. 90).

Selbach's argument that a creditor must do all to cease a discharge injunction violation while the debtor does nothing is misguided. The Debtor is requesting the Court to invoke its

---

[29] It was not until Selbach was pressed by the Court that he agreed to have the Debtor sign the stipulation of discontinuance, stating:

> **The Court**: Mr. Selbach, but what I'm trying to do is somewhat cut to the chase. . . . If I understand Mr. Applebaum, he is saying . . . in Rhode Island that once an answer is interposed that the Defendant has to consent . . . . But if we are talking ministerial actions here to try to take care of the ongoing situation, . . . I don't understand why the Debtor wouldn't simply consent to allow the matter to be withdrawn . . . .

> **Selbach**: Well, there would be two reasons Judge. First, the Debtor has no obligation to do anything, and by agreeing to some kind of a consent, we are waiving our argument that it was the exclusive duty of Applebaum to discontinue it. Moreover, Judge, all of the law that he cited saying he can't do that doesn't say that at all. I mean, I'm not a Rhode Island attorney but I can read a statute, it's frivolous.

> . . . .

> **The Court:** Mr. Selbach, are you saying that if Mr. Applebaum prepares the paperwork necessary and state law requires your signature that you aren't going to sign it?

> **Selbach**: No, what I am saying Judge is I don't think it's the Debtors duty. But obviously, to be practical, yes of course I'd sign that. But nothing that he has shown me says that is the Rhode Island statute.

(ECF No. 86, Hrg. at 4:53 & 8:25).

[30] Codie had filed a *pro se* answer to Jeffrey's Rhode Island collection action. He needed to stipulate to the dismissal.

inherent contempt power and to issue a sanction. While not requiring a Debtor to engage in a

massive undertaking to assist in resolving a discharge violation, the Court will look for all parties

to act reasonably. If signing a discontinuance is needed, it should be done. In a similar § 524

matter, Judge Krechevsky found:

> The evidence presented indicates that neither the debtor nor his attorney
> made any attempt to contact [the creditor] prior to filing the instant motion.
> The debtor was aware that the debt at issue had been discharged and was
> unenforceable. In light of the circumstances presented, the court concludes that
> the debtor incurred attorney's fees in excess of what was necessary to remedy the
> violation of the discharge injunction.

*Egbarin v. Law Off. of Robert H. Weinstein (In re Egbarin)*, No. 00-23132, 2007 Bankr. LEXIS
3512, at *7 (Bankr. D. Conn. Oct. 11, 2007) (exercising the bankruptcy court's discretion by
reducing an attorney's fees request of $4,125.00 to $687.50).[31]

The Court finds the *Egbarin* rationale persuasive, adopts the same and reiterates the obvious: any

attorney or individual appearing before this Court is expected, at minimum, to act reasonably.

Based upon the facts of this case and the substantial hours requested by Selbach, it

appears the fundamental requirement to be reasonable was not met. The Court will not approve

Selbach's request of 16.4 hours in the JS Fee Application when the motion for violating the

discharge injunction and everything thereafter was unnecessary to resolve the violation. (ECF

No. 256, Ex. 1). Rather, this Court will approve two and one-half hours ($750.00) for Jeffrey's

matter. However, because Applebaum drove much of this litigation, this amount will be

attributable to only Applebaum on Jeffrey's behalf.

---

[31] In this District, Selbach's fees have been reduced where he failed to return a creditor's call but instead filed a
motion for violation of the automatic stay. *In re Squire*, No. 13-62070, 2014 Bankr. LEXIS 1291, at *1 (Bankr.
N.D.N.Y. Mar. 26, 2014). In *Squire*, Judge Cangilos-Ruiz indicates:

> [W]hen presented with a clear opportunity to intervene and preclude aggravation and potential
> emotional distress to one's client, good advocacy suggests that counsel intervene. By electing not
> to return [the creditor's] phone call, Mr. Selbach does not negate the creditor's ultimate violation.
> At the same time, this court will not reward tactics intent upon generating anticipated attorneys'
> fees.

2014 Bankr. LEXIS 1291, at *13.

## CONCLUSION

This matter presents two seemingly conflicting issues for this Court to consider. On one hand, the collection actions taken by Applebaum on behalf of Kailey willfully violated § 524. On the other hand, Selbach seemingly engaged in unnecessary and excessive litigation tactics. Therefore, Selbach will be awarded an amount reflecting the necessary work performed to cease the violations. Neither Boyle nor Codie will receive a portion of these attorney's fees. For all the aforementioned reasons, the Court finds $300.00 per hour reasonable and approves that hourly rate. The Court approves the following fees and costs payable to Selbach:

(i)     From Applebaum[32] payable on behalf of himself and Kailey:

   **34.1 hours x $300.00** (attorney's fees) = **$10,230.00**
   **4% of $10,230.00** (preparing fee application) = **$409.20**
   **$839.20** (costs)
   -------------------
   **Total: $11,478.40**

(ii)    From Applebaum payable on behalf of himself and Jeffrey:

   **$750.00** (attorney's fees)

(iii)   From Kailey[33] on behalf of herself:

   **$420.00** (attorney's fees)

Date: April 28, 2023.
Albany, New York

/s/ Robert E. Littlefield
Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Court

---

[32] Applebaum is responsible for the bulk of the attorney's fees because he has made it clear that Jeffrey and Kailey were following his legal advice. "[W]hen the responsibility for an unjustifiable position taken with respect to a motion to compel rests solely with a party's attorney, courts may order that attorney to pay expense shifting sanctions." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, No. 08-01789, 2020 Bankr. LEXIS 724, at *55 (Bankr. S.D.N.Y. Mar. 20, 2020) (citing 7 HON. WAYNE D. BRAZIL, MOORE'S FEDERAL PRACTICE § 37.23[4][a] (3d ed. 2019).

[33] Kailey is responsible for this amount because the "relative culpability" of the parties can be utilized to determine the allocation of a fee award. *See, e.g., Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 575 (S.D.N.Y. 2010).